R. Rex Parris (Cal. State Bar No. 96567)
    rrparris@rrexparris.com
Alexander R. Wheeler (Cal. State Bar No. 239541)
    awheeler@rrexparris.com
Kitty K. Szeto (Cal. State Bar No. 258136)
    kszeto@rrexparris.com
Douglas Han (Cal. State Bar No. 232858)
    dhan@rrexparris.com
**R. REX PARRIS LAW FIRM**
42220 10th Street West, Suite 109
Lancaster, California 93534
Telephone:  (661) 949-2595
Facsimile:  (661) 949-7524

Edwin Aiwazian (Cal. State Bar No. 232943)
    edwin@aiwazian.com
Arby Aiwazian (Cal. State Bar No. 269827)
    arby@aiwazian.com
Jill J. Parker (Cal. State Bar No. 274230)
    jill@aiwazian.com
Maria F. Nickerson (Cal. State Bar No. 274225)
    maria@aiwazian.com
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Telephone:  (818) 265-1020
Facsimile:  (818) 265-1021

*Attorneys for* Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| ALADDIN ZACKARIA, individually, and on behalf of other members of the general public similarly situated, and on behalf of aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"); <br><br> Plaintiff, <br><br> vs. <br><br> WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. EDCV11-01418 VAP (DTBx) <br><br> Honorable Virginia A. Phillips <br><br> **CLASS ACTION** <br><br> **DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF ALADDIN ZACKARIA'S MOTION TO REMAND** <br><br> Date:  November 7, 2011 <br> Time:  2:00 p.m. <br> Place: Courtroom 2 <br><br> Complaint Filed: August 3, 2011 |

## DECLARATION OF EDWIN AIWAZIAN

I, Edwin Aiwazian, declare as follows:

1. I am an attorney duly licensed to practice before all courts of the State of California and the United States District Court for the Central District of California. I am a member of Lawyers *for* Justice, PC, attorneys of record for Plaintiff Aladdin Zackaria ("Plaintiff") in this case. The facts set forth in this declaration are within my personal knowledge and, if called as a witness, I could and would competently testify as follows.

2. On August 3, 2011, Plaintiff filed this putative class action against Defendant Wal-Mart Stores, Inc. ("Defendant") in the Superior Court of the State of California for the County of San Bernardino, Case No. CIVRS1107132.

3. On September 7, 2011, Defendant filed a Notice of Removal Pursuant to 28 U.S.C. Section 1332(D)(2) (CAFA).

4. Defendant, in its removal papers, relies upon a declaration of Ronald Lance.

5. As Defendant's Notice of Removal was based upon speculation and conjecture and failed to establish by a preponderance of the evidence that the amount in controversy met the federal jurisdictional threshold, on September 13, 2011, I sent counsel for Defendant a meet and confer letter explaining why Defendant's removal was improper. A true and correct copy of this letter dated September 13, 2011 is attached hereto as Exhibit A.

6. On September 20, 2011, Robert Goldich, counsel for Defendant, responded to my September 13, 2001 letter with a letter indicating Defendant's refusal to withdraw its Notice of Removal and stipulate to remanding this action back to the San Bernardino Superior Court. A true and correct copy of this letter dated September 20, 2011 is attached hereto as Exhibit B.

7. As a result of an inability to reach an agreement through the meet and confer process, this Motion to Remand was necessary.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 29th day of September 2011 at Glendale, California.

*[signature]*
Edwin Aiwazian

# EXHIBIT A



410 WEST ARDEN AVENUE · SUITE 203 · GLENDALE, CA 91203
TEL (818) 265-1020 · FAX (818) 265-1021 · WWW.AIWAZIAN.COM

September 13, 2011

**BY E-MAIL**

Todd R. Wulffson
Greenberg Traurig, LLP
3161 Michelson Drive, Suite 1000
Irvine, CA 92612

Re:   <u>Zackaria v. Wal-Mart</u>

Dear Mr. Wulffson:

      We write to meet and confer regarding Wal-Mart Stores, Inc.'s ("Defendant") Notice of Removal Pursuant to 28 U.S.C. § 1332(d)(2) ("Notice of Removal").

      Defendant has failed to meet its burden of proof for the federal jurisdictional amount in controversy for the class as 28 U.S.C. § 1332(d) requires. The Ninth Circuit has made clear that the strict "presumption [against removal] can only be overcome if the [removing] defendant can prove . . . – *with summary judgment type evidence* – that the factual circumstances of the case are such that it is more likely than not that the [amount in controversy] requirement is satisfied. (citations omitted)" *Mix v. Allstate Ins. Co.*, No. CV 00-835 RCTX, 2000 WL 1449880 at *1 (C.D. Cal. 2000) (emphasis added); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[T]he defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount."). Thus, "[a] speculative argument regarding the potential value of the [amount in controversy] is insufficient." *Mix*, 2000 WL 1449880 *1 (quoting *Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998).

      Regardless of whether the legal certainty or preponderance of the evidence standard applies, Defendant falls significantly short of meeting its burden of proof. Despite the Ninth Circuits' explicit requirement of summary judgment type evidence, Defendant's calculations rest upon various assumptions that have minimal evidentiary support. *See Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 996 (9th Cir. 2007); *Martinez v. Morgan Stanley & Co.*, 2010 U.S. Dist. LEXIS 80797, *12-13 (S.D. Cal. 2010) (finding that although the plaintiff alleged she "consistently worked in excess of eight hours in a day and/or in excess of forty hours in a week," the defendant's subsequent assumption that the plaintiff "worked four hours of unpaid overtime per workday for the entire class period" did not sustain its burden of proof). Defendant fails to provide *any* employment records or other admissible evidence to support its amount in controversy calculations. Defendant's evidentiary record in support of removal is premised upon the declaration of one employee who fails to establish any foundation regarding the contents of documents not provided to the Court. *Fed. R. Evid.* 1002. The Court will not permit

Defendant to rely on these unsupported and speculative allegations to overcome its burden to establish the requisite amount in controversy. For the same reasons, Defendant has failed to establish minimal diversity as 28 U.S.C. § 1332(d) requires.

    Accordingly, we request that Defendant withdraw its Notice of Removal by the close of business on **September 20, 2011**. Otherwise, Plaintiff will file a Motion to Remand to State Court under 28 U.S.C. § 1447. As always, we look forward to working with you to resolve this issue. If you have any questions or concerns, please feel free to call us.

With kind regards,

Edwin Aiwazian

# EXHIBIT B

# GT GreenbergTraurig

Robert M. Goldich
Tel 215.988.7883
Fax 215.717.5242
goldichr@gtlaw.com

September 20, 2011

**VIA FAX AND U.S. MAIL**

Edwin Aiwazian, Esq.
The Aiwazian Law Firm
410 W. Arden Avenue, Suite 203
Glendale, CA 91203

    Re:   *Zackaria v. Wal-Mart Stores, Inc.*
           U.S.D.C. Central District of California, Eastern Division;
           No. EDCV11-1418 VAP (DBx)

Dear Mr. Aiwazian:

    This is in reply to your letter to Todd Wulffson, dated September 13, 2011, regarding the Notice of Removal that we filed on behalf of Wal-Mart Stores, Inc. ("Wal-Mart"). Your letter does not contain any factual information supporting your contention that Wal-Mart's statement of the amount in controversy for purposes of the Class Action Fairness Act ("CAFA") was incorrect.

    Under CAFA, the Court must consider whether the claimed damages of the class which the plaintiff seeks to represent exceeds the sum of $5,000,000. Our Notice of Removal establishes that the amount in controversy requirement in this case is easily satisfied. Your civil case cover sheet in the State Court states that the plaintiff is seeking in excess of $25,000. If this is representative of the amount in controversy for all 400 putative class members, then the amount in controversy will exceed $10,000,000.

    Please provide us with specific information regarding the amount of unpaid overtime which the plaintiff contends is owed to him by Wal-Mart based upon his claimed hours worked, together with your calculation of the amount of interest, statutory penalties and potential attorneys fees at issue in the case.

    In support of Wal-Mart's estimate of the potential amount at issue, I enclose the Declaration of Ricardo Beltran, a California Asset Protection Coordinator, regarding the amount of overtime hours which he claimed to work as an Asset Protection Coordinator at Wal-Mart. While Wal-Mart disputes Mr. Beltran's Declaration, it constitutes relevant evidence of the amount in dispute.

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TYSONS CORNER
WASHINGTON, D.C.
WHITE PLAINS
ZURICH*

PHI 316776593v1

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
2700 Two Commerce Square ■ 2001 Market Street ■ Philadelphia, PA 19103 ■ Tel 215.988.7800 ■ Fax 215.988.7801

Edwin Aiwazian, Esq.
September 20, 2011
Page 2

---

      Upon receipt of the information which we have requested regarding Mr. Zackaria's claimed damages, we would be happy to schedule a call with you to meet and confer regarding your intended motion to remand.

                                   Sincerely yours,

                                   Robert M. Goldich

RMG/bjp
Enclosure
cc:    Todd Wulffson, Esq. (*via email*)

## DECLARATION OF RICARDO BELTRAN

I, RICARDO BELTRAN, declare as follows:

1. I am over the age of eighteen years of age. I am a resident of the State of California. I have personal knowledge of the facts set forth in this declaration.

2. I was employed by Wal-Mart Stores, Inc. ("Wal-Mart") as a salaried employee from on or about 2006 until September 2007 at its Chino store in California. My job title during this period was Asset Protection Coordinator (or "APC"). Prior to becoming an APC, I was an hourly-paid Loss Prevention Officer/Investigator for Wal-Mart for several years.

3. As an Asset Protection Coordinator, I was not paid overtime compensation for working more than 40 hours in a given work week, nor was I required to record the time I spent working in order to be paid. Rather, I was required to work a minimum of 48 hours per week (though I often worked more than this), and routinely worked on weekends.

4. As an APC, I worked an average of approximately 50 hours per week. On occasion, I worked in excess of 60 hours per week. Also, because the Chino store was open 24 hours a day, seven days a week, I was required to answer and respond to any telephone calls from the store when I was not working. Accordingly, there were many times when I received telephone calls in the middle of the night in which I was asked to (and did) return to work. At other times, I was required to work extended hours, including up to 12 hour days. On multiple occasions throughout the year, I also worked without taking a lunch break.

5. I recall that my work hours typically overlapped with that of the store manager, and that it was mandatory to work certain days of the week. In addition, before I could take time off, I had to seek the permission of my Market Asset Protection Manager ("MAPM"), Lance Ludvigson. (I believe the MAPM is the next highest level of management in the asset protection

hierarchy and is responsible for overseeing the asset protection functions of several stores.) I recall that the needs of the business took priority over my schedule and I had little to no input regarding the hours I was required to work, and certainly no control.

6. As an APC I spent more than half of my time performing various "audits" mandated by Wal-Mart. I believe these audits were created by Wal-Mart. I did not create or devise any audit.

7. I recall that there were daily, weekly and monthly audits, including those related to Wal-Mart's "National Priorities Program." The audits were simply checklists of activities that needed to be performed in each store. Once the audits were complete, we were required to enter the results of the audit in to the computer. Conducting these audits was my primary job activity and took up the majority of my time.

8. I believe the purpose of these audits was to identify theft and keep track of Wal-Mart's inventory of goods. For example, when the store received a shipment of goods, I had to count the items coming off the truck. When the goods were put on display for sale to customers, I had to count them again. Then, after being on sale for a couple of days, I was required to count them for a third time. This information was then input into the computer and used by store management to identify potential issues, including theft. I did not consider these audits a management function, and they were also performed by the APA. In fact, as a Loss Prevention Officer/Investigator I performed many of the same functions that are now performed by APCs.

9. These activities constituted what I primarily did at Wal-Mart. I estimate that I spent well over 50% of my time performing these audits.

10. Although I had the title of coordinator, my managerial responsibilities were limited. The Store Manager and MAPM were the ones with the authority over the store's asset

protection functions. For example, I did not have the authority to hire, fire, promote or demote any Asset Protection Associate ("APA") working in the store. This was always done by the Store Manager and MAPM, and I had no or very little involvement regarding such matters. On one occasion, I asked a potential new APA a set of pre-determined questions that were given to me by Wal-Mart. I was instructed to write down the answers and pass the information to the store manager, who then conducted his own interview. I believe that the decision to hire any APA was ultimately made by the MAPM. I did not recommend that the applicant be hired. Beyond this, I was not involved in the hiring or firing process, or determining whether an employee was promoted or demoted.

11. I recall that I was also required to sit in on weekly meetings with the managers in our store. One some occasions these lasted approximately one to two hours. During these meetings, I was not asked to provide any substantive feedback nor contribute in any significant manner. I did not consider myself a member of store management, nor was I treated like one by store management.

12. In addition to performing audits, I regularly performed the work of the store's hourly, non-exempt APA. (During my time as an APC at Wal-Mart, there was generally only one APA employed in our store at any one time.) Among other things, I frequently walked the store and reviewed video footage looking for shoplifters. Likewise, the APA assisted with and/or performed the company's audits.

13. I often was directed by my MAPM to perform various tasks. Because my MAPM was based in my store, he often directed that I go to other stores in our district to help the APC's with inventory issues.

3

14. In my position as APC, I was supervised by my Store Manager and MAPM. I played a nominal role in directing or managing the work of the store's APA. Generally, the APA knew the tasks required to be performed and completed. Wal-Mart provides APA's with a lot of training about policies and procedures and the tasks they are required to perform as APA's. Therefore, in my position as an APC, my time with APAs was often limited to reminding them of what Wal-Mart's policies and procedures were. To ensure that I did this properly, Wal-Mart provided me with various guides and manuals.

15. I did not establish store policies or procedures. Rather, we were required to follow policies and procedures which were prepared by Wal-Mart. The managers above me – the Store Manager and MAPM – made all of the decisions that required any real discretion, and the decisions that I was allowed to make had to be in line with company policies and procedures.

16. I believe my experience at Wal-Mart was typical of other APC's. For example, the APC's I worked alongside with at other stores performed the same type of work as I did, and also worked long hours each week. It is my understanding that all Wal-Mart APCs were paid a salary, and, like me, routinely worked more than 40 hours per week without being paid overtime.

17. To the best of my knowledge, Wal-Mart's policy is that APCs are not entitled to overtime pay. In keeping with this policy, I was not paid overtime when I worked more than 40 hours in a work week. Regardless of the number of hours I worked, I was paid the same amount for every pay period.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 27, 2010, in CORONA, California.

RICARDO BELTRAN

4

# HP LaserJet  *M2727nf MFP*

# Fax Confirmation Report

THE AIWAZIAN LAW FIRM
(818)265-1021
Sep-20-2011    9:12AM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|---|
| 3951 | 9/20/2011 | 9:08:30AM | Receive | | 4:22 | 7 | OK |

---

09/20/2011 11:17 FAX                                                                                      ☒ 001/007

**GT GreenbergTraurig**

**Transmittal Cover Sheet**

| From: | Tel: | E-Mail: |
|---|---|---|
| Robert M. Goldich | 215.988.7883 | goldichr@gtlaw.com |

| To: | Fax No: | Company: | Phone No.: |
|---|---|---|---|
| Edwin Aiwazian Law Firm | 818.265.1021 | The Aiwazian Law Firm | |

**File No.:**

**Re:** Zackaria v. Wal-Mart Stores, Inc.

**Date:** September 20, 2011

**No. Pages:** Including Cover Sheet   7

*If you do not receive all pages properly, please call the sender.*

**Notes:**

Also sent via:   [X] US Mail   [ ] Overnight   [ ] Messenger   [ ] Email   [ ] No Other

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for your postage. Thank you.

2700 Two Commerce Square, 2001 Market Street, Philadelphia, Pennsylvania 19103   Phone: 215.988.7800   Fax: 215.988.7801
PHI 316771696v2